**E-FILED**
Thursday, 31 March, 2016  01:09:41 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **YVONKIA STEWART,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 14-3265** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Plaintiff Yvonkia Stewart's Motion for Summary Judgment (d/e 25) and Defendant Carolyn Colvin's Motion for Summary Affirmance (d/e 28).  Because the Court finds that the Social Security Commission's decision was supported by substantial evidence and Plaintiff is not entitled to a Sentence Six remand because her new evidence does not create a reasonable probability that the ALJ would come to a different conclusion, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Affirmance is GRANTED.

# I. **BACKGROUND**

*a. Plaintiff's original applications.*

On April 23, 2010, Plaintiff, Yvonkia Stewart, *pro se* filed a Title II application for a period of disability and disability benefits. She also filed a Title XVI application for supplemental security income on the same date.  In both applications, Plaintiff alleged disability beginning October 8, 2008.  Plaintiff alleged that her permanent disability is a result of the following medical conditions: herniated disc, spinal compression/cervical, thoracic and lumbar radiculopathy/stenosis, recurrent simple partial seizures, cardiovascular injury/disease, and residual functional capacity limitations.  *See* Pl. Mot. Summ.J. (d/e 25) at 6.  Plaintiff's applications were initially denied on July 22, 2010 and again denied upon reconsideration on January 20, 2011.  On March 18, 2011, Plaintiff requested administrative review of the decision.

*b. Plaintiff's Administrative Hearings and Decision*

Administrative Law Judge John M. Wood ("ALJ") held an in-person hearing in Springfield, Illinois, on March 22, 2012.  James Ragains, an impartial vocational expert also appeared and testified

at the hearing.  On December 4, 2012, the ALJ held a supplemental video hearing.  Plaintiff was represented by Joe Ira Lipsey, a non-attorney representative.

On February 8, 2013, the ALJ denied Plaintiff's application because Plaintiff has not been and is not "under disability within the meaning of the Social Security Act ("SSA") from October 8, 2008, through the date of this decision."  R., p. 18.  The following is a summary of the ALJ's findings[1]:

Although Plaintiff had a representative, she often sought to act *ex parte*.  Plaintiff frequently contacted the ALJ directly.  Plaintiff also submitted a number of medical reports that included "her personal notes and comments handwritten on them," documents filed with Worker's Compensation, and emails expressing her displeasure with her legal representation, her Worker's Compensation case, and her medical treatment.

At the original hearing, "the claimant and her representative alleged a medical conspiracy and asked that many medical personnel be subpoenaed for a supplemental hearing."  However,

---

[1] *See* ALJ Decision (R. pp. 17-31).

although the ALJ informed Plaintiff's representative that the issue would need to be briefed, no brief was submitted.  Plaintiff further complained that outstanding medical records remained.  In response, the ALJ obtained the records the Plaintiff requested. Plaintiff additionally requested a supplemental hearing, though Plaintiff provided no justification for needing a supplemental hearing.  However, the ALJ granted the supplemental hearing and informed Plaintiff that any other claimed outstanding medical records needed to be obtained prior to the supplemental hearing. No additional medical evidence was submitted prior to the hearing.

Plaintiff meets the insured status requirement of the SSA. Further, Plaintiff has not engaged in substantial gainful activity since October 8, 2008.  Plaintiff suffers from the following severe impairments: degenerative disc disease, myofascial pain syndrome, suspected sleep disorder, mood disorder, and history of substance abuse.  These impairments significantly limit Plaintiff's ability to perform basic work activities.

Plaintiff complained that she is further disabled by "seizures." She submitted second-hand accounts of symptoms, mostly from

friends and relatives.  However, the neurologists who have treated
Plaintiff have not diagnosed any seizure disorder.  Therefore, the
ALJ found that the "seizures" were actually body spasms.  Further,
Plaintiff has been known to "repeatedly engage in symptom
magnification," which renders third party observations of her
symptoms immaterial.  Plaintiff also testified that: (1) she can
control the seizures; (2) she only has the seizures when she walks
on concrete; and (3) she previously treated the seizures through
medication but stopped because of side effects.  Plaintiff argued
that doctors have fraudulently altered medical records regarding
her seizures.  However, there was no evidence of medical records
being altered, and doctors noted that Plaintiff showed evidence of
"malingering and symptom magnification."  Therefore, the ALJ
found that the seizures were not medically determinable.

The ALJ found that Plaintiff does not have impairments that
medically equal the severity of one of the listed impairments in 20
C.F.R. 404, Subpart P, Appendix 1.  First, Plaintiff's degenerative
disc disease does not constitute the "major dysfunction of a joint"
because Plaintiff retains substantial mobility in the joints and the

impairment has not come to compromise the nerve root or spinal cord.  Second, Plaintiff's myofascial pain syndrome is not a listed impairment.  Third, Plaintiff's suspected sleep disorder does not include significant pulmonary artery pressure or arterial hypoxemia, nor does the disorder appear to be related to abnormal mental state and loss of functional abilities.  Finally, Plaintiff's mental impairments have not resulted in hospitalization or treatment or any significant functional limitation.

Further, Plaintiff retains significant functional abilities.  She is the sole caregiver for her 10-year-old son.  Plaintiff is able to use stairs, shop for groceries, iron, cook, do dishes, run errands, and participate in many other daily activities.  She also submitted statements from friends suggesting that she has the ability to socially interact.

Although the ALJ found that Plaintiff does have underlying severe impairments, the ALJ further found that Plaintiff's history of symptom-magnification makes it difficult, for both doctors and adjudicators, to determine her functional abilities.  (The ALJ then provided extensive evidence of doctors' difficulties determining

Plaintiff's functional abilities based on Plaintiff's exaggeration of symptoms and lack of effort during examinations.)  Thus, the ALJ based his findings primarily on the objective medical evidence. Considering Plaintiff's medically supported impairments, the ALJ found that Plaintiff can perform "sedentary work," with the following exceptions: climbing ladders, ropes, or scaffolds; more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, or crawling; and more than occasional interaction with coworkers, supervisors, or the public.  Therefore, the ALJ found that Plaintiff's "allegation of complete and total disability cannot be fully accepted."

The ALJ found that, although Plaintiff is unable to perform her past work as a "job operations manager, customer service retail manager, and data entry specialist," Plaintiff is able to adjust to other work.  Plaintiff is a younger individual, age 35 at the time of the hearing, she has at least a high school education, and she can communicate in English.  A vocational expert testified that given all of Plaintiff's limitations, she would still be able to perform all the requirements of "representative occupations such as general office

clerk and ticket counter."

Because Plaintiff has the ability to successfully adjust to other work and the positions available to Plaintiff "exist[ ] in significant numbers in the national economy," the ALJ ultimately found that Plaintiff is "not disabled."

   c. *Plaintiff's Appeals to Date.*

On April 27, 2013, Plaintiff requested that the Appeals Council review the ALJ's decision.  *See* R. p. 11.  Plaintiff submitted additional evidence to the Appeals Council, which the Council accepted into the record.  *See* R. p. 7-8.  On June 18, 2014, the Appeals Council informed Plaintiff that, based on a review of the Plaintiff's reasons for disagreeing with the ALJ along with the additional evidence, the Appeals Council declined to review the ALJ's decision.

On August 22, 2014, Plaintiff filed a complaint in this Court requesting that the Court review the ALJ's decision.  On June 1, 2015, Plaintiff moved for summary judgment (d/e 25).  On September 17, 2015, the Commissioner filed a cross motion for summary affirmance (d/e 28).  Plaintiff argues that the

Commissioner's decision is not supported by substantial evidence
in the record.  Specifically, Plaintiff argues that the ALJ improperly
labeled her "purely physical" impairments associated with periodic
seizures as "Anxiety Disorder accompanied with depression."  *See*
Pl. Mot. Summ.J. (d/e 25) at 6 (citing R., p. 112-16).  Plaintiff also
submits new evidence, which she claims, if considered by the ALJ,
would lead to a different conclusion about the extent of her
functional limitations.  *See id.* at 6.  Now, after review of the record,
the Court finds that the ALJ's decision was based on substantial
evidence.  The Court further finds that the new evidence submitted
by Plaintiff does not create a reasonable probability that the ALJ
would come to a different conclusion.  Therefore, the Court DENIES
Plaintiff's Motion for Summary Judgment and GRANTS the
Commissioner's Motion for Summary Affirmance.

## II. <u>LEGAL STANDARDS</u>

In the Court's *de novo* review of the ALJ's decision, adopted by
the Appeals Council, the Court does not "try the case *de novo*
or...supplant the ALJ's finding with the court's own assessment of
the evidence," but rather the Court reviews the ALJ's decision to see

if the decision is supported by substantial evidence.  *Cook on Behalf of Cook v. Sullivan*, 812 F.Supp. 893, 898 (C.D.Ill. 1993) (citing *Pitts v. Sullivan*, 923 F.2d 561 (7th Cir. 1991)).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate'" to support the decision.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).  "When assessing an ALJ's credibility determination, we do not…undertake a *de novo* review of the medical evidence that was presented to the ALJ.  Instead, we merely examine whether the ALJ's determination was reasoned and supported."  *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008).

The Court, via a Sentence Six remand, "may at any time order additional evidence to be taken before the Commissioner but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…."  42 U.S.C. § 405(g).  "New evidence is material if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered."  *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir.

2005).

### III. <u>ANALYSIS</u>

Plaintiff contests the ALJ's findings as to her "physical impairments."  Pl. Mot. Summ.J. (d/e 25) at 6.  Plaintiff believes that she has additional impairments, specifically seizures, which were not found by the ALJ and that the ALJ mislabeled some of her physical impairments as anxiety disorder and depression.  Further, Plaintiff argues that she is entitled to a Sentence Six remand because she has submitted new evidence that she was not available to her at the time of the ALJ's decision.  She alleges that the new evidence would lead the ALJ to reach a different conclusion about her functional limitations and her ability to adjust to other work.

First, the Court finds that, substantial evidence exists in the record to support the ALJ's decision.  Second, the Court finds that Plaintiff's new evidence does not create a reasonable probability that the ALJ would have reached a different conclusion.

### a. The ALJ's Decision is Supported by Substantial Evidence.

To establish a disability for either Plaintiff's application for disability insurance benefits or Plaintiff's application for

supplemental security income, Plaintiff must show that she has a medically determinable physical or mental impairment, expected to last 12 months or result in death, that renders her unable to engage in substantial gainful activity.  *See* 20 C.F.R. §§ 404.1500-404.1599; 20 C.F.R. §§ 416.900-416.998.  A "medically determinable" impairment is an impairment that "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "be established by medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. § 404.1508.

The Commissioner uses a five-step process to evaluate whether a claimant can engage in gainful activity.  20 C.F.R. § 404.1520.  In the first four steps, Plaintiff bears the burden of proving that she has severe physical or mental impairments and that her impairments prevent her from engaging in past relevant work.  *See Butera v. Apfel*, 173 F.3d 1049, 1054 (7th Cir. 1999).  Then, in the fifth step, the Commissioner has the burden of proving that Plaintiff can adjust to other work.  *See Schmidt*, 395 F.3d at 742.

In Plaintiff's case, the ALJ determined that Plaintiff's impairments prevented her from doing her past relevant work; however, the ALJ further determined that Plaintiff could perform other jobs that existed in significant numbers in the economy. Plaintiff argues that the ALJ's determination that she could perform other work is not supported by substantial evidence because the determination did not account for her "recurrent simple partial seizures undiagnosed by medical providers nor controlled by medications...."  Pl. Mot. Summ.J. (d/e 25) at 6.  However, the ALJ considered the evidence concerning Plaintiff's alleged seizures and found that the seizures, as well as additional symptoms and limitations of which Plaintiff complained, were not supported by the medical evidence.  R. pp. 20-21.

The ALJ found that Plaintiff's "credibility is extremely poor, as evidenced by the numerous reports of symptom magnification, exaggerated pain behaviors, submaximal and inconsistent effort and malingering."  R. p. 28.  Based on the evidence cited by the ALJ, this Court finds the ALJ's credibility determination to be "reasoned and supported."  *Elder*, 529 F.3d at 414*; see also,* Def.

Mot. Summ.J. (d/e 28) at 4 (citing a list references to the record,

made in the ALJ decision, where doctors questioned Plaintiff's

credibility).  Doctors noted that Plaintiff "exaggerated" responses,

"did not give maximal effort" on tests, exhibited "self-limiting

behavior," and was "unwilling[ ] to cooperate."  R. pp. 24-26.

Therefore, based on the ALJ's reasonable credibility determination

and the requirement of 20 C.F.R. § 404-1520 that impairments

must be established by more than a claimant's "statement of

symptoms," the ALJ acted appropriately in basing its evaluation

strictly on the objective medical evidence.

The ALJ found that Plaintiff's complaints of seizures, severe

pain, and functional limitations were not supported by the medical

evidence.  *See* R. p. 28.  The ALJ cited a number of instances in the

record to support his findings that Plaintiff's seizures, pain and

functional limitations did not have a medical cause.  *See* R., p. 28

("MRIs of cervical and lumbar spines indicated only mild findings.

EMG and nerve condition studies were normal.  Evoked potential

studies were also within normal limits.  A pain-management doctor

recommended no treatment regimen at the pain clinic, but advised

[Plaintiff] to attend a neurosurgery evaluation.  [Plaintiff's]
neurologist also repeatedly advised [her] to attend a neurosurgery
evaluation.  However, there is no indication in the record that [she]
ever did so.  By her own admission, she does not take pain
medication.  She also testified to a wide array of daily activities,
which belies her allegation of disabling pain."); *see also*, Def. Mot.
Summ.J. (d/e 28) at 5 (summarizing numerous other references to
the medical record within the ALJ decision).

Further, the ALJ found that, although Plaintiff is unable to
return to her past jobs, Plaintiff is able to adjust to other work.  The
vocational expert, James Ragains, testified that, given Plaintiff's
"age, education, and work history," as well as her physical
limitations," Plaintiff would be able to perform representative jobs,
such as "mail clerk" and "ticket counter."  R., p. 70-71.  The expert
further testified that the Plaintiff had significant opportunities to
work in these positions in the current economy.  *See* R., p. 71
(stating that there are "roughly 2,800 of these jobs now in Illinois,"
in reference to "ticket counters").

From the medical evidence and the testimony of the vocational

expert, the ALJ reasonably found that, although Plaintiff was "limited to sedentary work," she could perform other jobs that existed in significant numbers in the national economy.  *See* R. pp. 29-30.  The ALJ pointed specifically to "office clerk" and "ticket counter" positions identified by the vocational expert.  *Id.* at 30. Therefore, the Court finds that the ALJ's determination is supported by substantial evidence.

### b. Plaintiff's New Evidence Does Not Create a Reasonable Probability That the ALJ Would Have Reached a Different Conclusion.

Plaintiff next argues that this Court should remand her case under Sentence Six because Plaintiff has submitted additional evidence into the record that would change the ALJ's evaluation of her functional limitations, and thus undermines the ALJ's finding that alternative employment is available to Plaintiff.  However, the Court finds that, even assuming that Plaintiff could demonstrate good cause for not previously submitting the evidence, as is required for a sentence six remand, the evidence submitted does not create a "reasonable probability" that the ALJ would have

reached a different decision.  *See* 42 U.S.C. § 405(g); *Schmidt*, 395 F.3d at 742.

Plaintiff has submitted purported electroencephalography[2] ("EEG") data in support of her complaints of seizures.  *See, generally,* Exh. 2-5 To Pl. Mot. Summ.J. (d/e 25).  However, Plaintiff submits only numerous pages of raw data, with no medical interpretation of the data or independent medical opinion that supports her characterization of the data as "reveal[ing] epileptic discharge" with "excessive muscle artifacts consistent with partial seizures."  Pl. Mot. Summ.J. (d/e 25) at 3.  Further, the EEG data was produced in late 2013, after the ALJ decision was made. Plaintiff provides no evidence that data from later 2013 is relevant to her condition at the time the ALJ issued his decision in February 2013 and, therefore, the data is not material evidence.  *See Getch v. Astrue*, 539 F.3d 473, 484 (holding that evidence is material only if it "speaks to the [plaintiff's] condition at or before the time of the administrative hearing.").

---

2 Electroencephalography data monitors electrical activity in the brain and is commonly used to diagnose epilepsy, among other brain disorders. *See* Niedermeyer E. and da Silva F.L., *Electroencephalography: Basic Principles, Clinical Applications, and Related Fields*, Lippincot Williams & Wilkins (2004).

Plaintiff also submitted two letters prepared in 2014 and 2015 by the Laser Spine Institute.  *See* Exh. 2 to Pl. Mot. Summ.J. (d/e 25-2) at 22, 26.  However, the letters do not contain medical opinions concerning Plaintiff's functional limitations during the period adjudicated by the ALJ.  In the letters, Dr. Michael Perry suggests a minor surgical procedure that would "provide relief from symptoms," but does not discuss the symptoms themselves.  *Id.* at 22. Further, the letters refer only to recent MRIs, and the 2015 letter states that an "evaluation at our surgery center will be necessary to determine the exact diagnosis."  *Id.*  Therefore, the opinion does not represent new evidence of an actual examination of Plaintiff.  *See Similia v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009) (finding that evidence is not "new" if the doctor "did not reexamine [the plaintiff] or conduct new psychological tests").

Plaintiff additionally submitted the introductory page of an updated "B-200" functional capacity report.  *Id.* at 1.  However, the "report" does not contain: (1) the professional qualifications of the individual conducting the test, (2) that individual's interpretation of the results, or (3) the relevance of the report to the time period

reviewed by the ALJ.  The introductory page consists only of an explanation of the data that would be shown if a functional capacity evaluation followed.  However, the functional capacity evaluation that does follow this introductory page in Plaintiff's newly submitted documents is a report that is already in the record considered by the ALJ.  *See id.* at 2-9.  Even if this B-200 introductory page contained a relevant medical opinion about Plaintiff's additional functional limitations by an accredited medical expert, the report would still only be added to an administrative record where it is contradicted by two other functional capacity reports.  Further, the ALJ noted Plaintiff's inconsistent testing results and frequent lack of effort during tests when initially denying Plaintiff's claims.  Therefore, Plaintiff's admission of another inconsistent test into the record is not likely to change the ALJ's conclusion.

Finally, Plaintiff submitted a wealth of documentation concerning her post-partum cardiomyopathy in 2002.  *See* Exh. 2 and 3 to Pl. Mot.Summ.J. (d/e 25-2) at 25-116, (d/e 25-3) at 110-129.  However, Plaintiff has not demonstrated how this evidence relates to her health status during the period of time reviewed by

the ALJ, which began October 8, 2008, six years later.  Post-partum cardiomyopathy typically resolves after only a few months; and none of Plaintiff's doctors suggested that Plaintiff had a cardiac impairment during the time period reviewed by the ALJ.  *See generally*, Lil Barouch, M.D., *Peripartum Cardiomyopathy*, Johns Hopkins Medicine (available at http://www.hopkinsmedicine.org/heart-vascular_institute/clinical _services/centers_excellence/womens_cardiovascular_health_center /patient_information/health- topics/peripartum_cardiomyopathy.html) (last visited on March 25, 2016).  Further, Plaintiff continued to work for years after childbirth.  The ALJ already gave Plaintiff the "benefit of the doubt" in finding significant non-exertional impairments.  R. p. 29.  Therefore, the ALJ would be very unlikely to find additional functional impairments based on this evidence.

Because Plaintiff has not presented any evidence that creates a reasonable probability that the ALJ would come to a different conclusion, Plaintiff is not entitled to a sentence six remand.

## IV.  **CONCLUSION**

For the foregoing reasons, this Court AFFIRMS the decision of the ALJ; the Plaintiff's Motion for Summary Judgment (d/e 25) is DENIED; and the Defendant's Motion for Summary Affirmance (d/e 28) is GRANTED.  This case is CLOSED.

ENTER: March 30, 2016.

s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE